IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:18 CR 709 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | |
| ALAN T. HARGROVE, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by and through its attorneys, Justin E. Herdman, United States Attorney, and Henry F. DeBaggis, Assistant United States Attorney, and respectfully submits the within Government's Sentencing Memorandum.

### I. BACKGROUND

On November 21, 2018, Defendant Alan T. Hargrove was charged in a single count indictment with the June 30, 2018, robbery of Cortland Bank in Mantua, Ohio. On October 12, 2018, Hargrove met with FBI agents and after being confronted with the evidence, he confessed to robbing the bank. After the October 12th interview, Hargrove remained at liberty and the case investigative materials were forwarded to the U.S. Attorney's Office for prosecution. (*Presentence Investigation Report ("PSR"),* Doc. #11 *SEALED* PageID#50.)

In detailing post-indictment conduct, the *PSR* states:

**Adjustment for Obstruction of Justice**

12.  On November 26, 2018, a warrant was provided to FBI Officials in Cleveland, Ohio. On November 28, 2018, the defendant failed to self-surrender to FBI officials as previously agreed upon. On November 29, 2018, he was apprehended in Hardin, Montana, Big Horn County. On November 30, 2018, the United States Marshall Service took custody of the defendant at the Yellowstone County Detention Facility, and he was transferred to the Federal Courthouse in Billings, Montana. *Id.* PageID#51.

The *PSR* made no adjustment for obstruction of justice in calculating the offense level computation because "USSG §3C1.1, Application Note 5(C), indicates that avoiding or fleeing from arrest is an example of conduct ordinarily not covered by the adjustment in §3C1.1." *Id.* PageID#52.

Under the above application note the government agrees that fleeing from an arrest is conduct which ordinarily does not qualify for an obstruction of justice adjustment. However, the defendant's flight is a relevant historical background characteristic of Defendant which the Court should take into consideration in imposing sentence. Post-indictment, the FBI afforded Defendant the courtesy of self-surrender and he agreed to it. Despite this commitment, Defendant immediately fled the district necessitating extensive efforts by law enforcement to effect his arrest.

Defendant was arrested on the warrant over 1,500 miles from this district in Hardin, Montana where he was found sleeping in his automobile in a motel parking lot. Subsequently, the government expended substantial time and resources having Defendant transported back to the Northern District of Ohio.

## II.  THE OFFENSE CONDUCT

As it relates to the Cortland Bank robbery, the offense conduct section of the *PSR*, states, in part:

On June 30, 2018, an unidentified black male, dressed as a female, robbed Cortland Bank at 11661 SR 44, Mantua, Ohio. He provided a business card to the teller with a handwritten statement that said, "I'm a transsexual with full blown aids…I have nothing to lose! U have 3 mins to put 30,000 in my purse or I will kill us all." He placed a bag on the counter, and the teller saw four tubes that were approximately 10 inches long and were taped together. She also saw there were some wires with the pipe that could have been red or white. The teller complied and placed money and a red dye pack into the bag. The suspect then left the bank in a white car. As he was driving away the teller saw a red substance coming out of the driver's side window. The amount of money taken was $1,720. *Id.* PageID#50.

### III. SENTENCING GUIDELINE CALCULATION

The sentencing guideline calculation in the *PSR* calculates the sentencing guideline range as follows:

> **Base Offense Level USSG § 2B3.1………………………….. 20**
> **Financial Institution USSG § 2B3.1(b)(1)………………...….+2**
> **Dangerous Weapon Brandished USSG § 2B3.1(b)(2)(E)…....+3**
> **Acceptance of Responsibility USSG § 3E1.1(a) and (b)……...-3**
> **Total Offense Level……………………………………………. 22**
> *Id.* PageID#52.

Further, the *PSR* calculated Defendant as a criminal history category III with six criminal history points. Consequently, the *PSR* suggests Defendant's guideline imprisonment range at 22/III is 51 to 63 months.

### IV. GOVERNMENT'S SENTENCING POSITION

18 U.S.C. § 3553(a)(1) states that the court, in determining the particular sentence to be imposed, shall consider—

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>  (B) to afford adequate deterrence to criminal conduct;
>  (C) to protect the public from further crimes of the defendant; and

3

     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

In addition to the nature and circumstances of the conduct involved in the federal bank robbery, which involved a threat to kill bank employees and customers with a bomb, the history and characteristics of Defendant is a significant consideration at sentencing. Details of other prior offenses which were the basis for the scoring of Defendant's criminal history points is important for the Court to consider in imposing sentence. Defendant has six criminal history points which result in a criminal history category of III. Four of Defendant's criminal history points are from a state court sentence of 14 years, which Defendant served for convictions in 1999 for Aggravated Robbery with a Firearm Specification and Kidnapping for offense conduct on January 31, 1999, and an Aggravated Robbery which occurred on January 17, 1999.[1] *Id.* PageID#54.

The *PSR* provides very limited background information relating to the offense conduct for these 1999 offenses. As additional background, attached hereto are the indictment, supplemental indictment, and police reports for these offenses which occurred on January 31, 1999, and January 17, 1999. (See, attached Government's Exhibit 1 (indictment and supplemental indictment), Exhibit 2 (January 31, 1999, offense reports) and Exhibit 3 (January 17, 1999, offense reports.)

The offense reports (Government Exhibit 2) state that in the early evening on January 31, 1999, Defendant Hargrove entered an Akron Dairy Mart in Akron, produced a gun and demanded money from the clerk. The robbery was noticed by a Summit County Deputy who

---

[1] Defendant's first aggravated robbery occurred 8 days after he was released from prison on January 9, 1999, after serving a 6 month prison sentence for Aggravated Trafficking (F5). *Id.* PageID#54.

4

was outside parking his private vehicle. After recognizing the Deputy, Hargrove came around the corner of the counter, grabbed the clerk and stuck a gun in her side. As the Deputy pointed his own weapon through the front glass window and door areas of the store, Hargrove took the clerk hostage at gun point, brought her outside with him then fled on foot.

Hargrove was later arrested a few blocks from the store and taken into custody. During a custodial interview, Hargrove admitted his involvement in the robbery and said he did not know what to do when he saw the Deputy so "he grabbed the clerk at gun point and attempted to escape while using her as a shield." (Government Exhibit 2, pg. 4.) Hargrove was convicted of Aggravated Robbery with a Firearm specification and Kidnapping for these January 31, 1999, offenses. (See, *PSR,* Doc.#11 *SEALED* PageID#54 and Government Exhibit 1.)

A direct supplement to the 1999 state court indictment added an additional count of Aggravated Robbery with a Firearm specification, in which Defendant was charged with the armed robbery of another Dairy Mart, two weeks prior, on January 17, 1999. *Id.* This armed robbery occurred in the early morning hours at a Dairy Mart on Cuyahoga Falls Avenue. At this Dairy Mart, Hargrove pulled a ski-mask over his face upon entering the store, pointed a gun at the clerk and demanded money from the register and keys to the safe. After taking cash from the register, Hargrove walked the clerk to the front door while holding the gun to the clerk's back then fled on foot. Hargrove was convicted of Aggravated Robbery[2] for this January 17, 1999, offense. (*Id.* and Government Exhibit 3.)

---

[2] The sentences for these two aggravated robberies were imposed at the same time and scored a total of 3 criminal history points in the *PSR*. The Government believes that each of these prior aggravated robberies was a "crime of violence." But for the provision of U.S.S.G. § 4B1.2(c), which requires that the two prior felony crimes of violence must be "counted separately under the provisions of §4A1.1 (a), (b), or (c)," the Government believes that Defendant likely would have qualified as a Career Offender which would have resulted in a base offense level of 32. (As

The federal bank robbery offense before the Court will be Defendant's third armed robbery conviction and third offense of violence in which he threatened the lives of others. Given the nature and circumstances of the federal offense and the history and characteristics of Defendant, the Government believes that a term of custody above the high end of the guideline range is necessary for the safety of the community and to provide just punishment.  The *PSR* calculates the total offense level of 22 with a criminal history category of III which results in a suggested guideline sentencing range of 51 months to 63 months; however, the Government believes a lengthier sentence is appropriate.

## V.  AN UPWARD VARIANCE IS APPROPRIATE

A sentence in the suggested range of 51 months to 63 months is insufficient based on the nature and circumstances of the offense and the history and characteristics of the defendant.  The following circumstances of the offense conduct support a longer term of imprisonment:

1) Defendant carefully planned the Cortland Bank robbery.  He rented a car the day before the bank robbery to drive to and from the bank to avoid detection.  Defendant took the time to dress as a woman and even used nail polish on his fingernails so he would look like a woman;

2) Defendant threatened the lives of others in the Cortland Bank when he displayed what purported to be a pipe bomb after giving the teller a note which instructed the teller that she had 3 minutes to give him $30,000.00 or "I will kill us all." *Id.* PageID#50; and

3) Defendant robbed the Cortland Bank on June 30, 2018, approximately 6 months after the expiration of his post-release control on two armed robbery state court convictions in which he threatened the lives of two store clerks with a firearm.

The history and characteristics of the defendant which support a lengthier sentence are:

---

a career offender, after acceptance of responsibility, Defendant's sentencing range would have been 29/VI=151-188 months in the present case.)

6

1) Defendant committed his first armed robbery 8 days after being released from state prison after serving a 6 months prison sentence for Aggravated Trafficking;

2) Defendant committed a second armed robbery 14 days after his first armed robbery and kidnapped a female store clerk with a firearm and used her as a shield to facilitate his escape;

3) After serving a prison sentence of 14 years for 2 armed robberies, Defendant was placed on post-release control for 5 years during which he was convicted of 9 separate misdemeanor and felony offenses including a felony breaking and entering which occurred on February 28, 2016[3];

4) Defendant committed the instant offense less than a year after his post-release control expired after serving a state court sentence of 14 years for 2 prior armed robberies; and

5) After being notified by law enforcement of his indictment in this case and arranging to turn himself in, Defendant fled and was arrested several days later in a motel parking lot in Hardin, Montana.

Given the nature and circumstances of the offense and the history and characteristics of Defendant, the Government believes that an upward variance is appropriate. The Government believes that an upward variance of 2 offense levels and 1 criminal history category is appropriate under the circumstances. This is Defendant's third armed robbery and but for the scoring limitations of the criminal history guidelines, Defendant would have been a career offender with a suggested sentencing guideline range of 151 to 188 months imprisonment. A sentence within the *PSR* suggested range of 51 to 63 months would fail to reflect the seriousness of the offense, promote respect for the law, provide just punishment or protect the public from further crimes of the defendant.

---

[3] According to the *PSR*, none of these convictions resulted in a revocation of Defendant's post-release control. *Id.* PageID#54.

The Government believes that a sentence at the high end of a 24/IV range of 77 months to 96 months is sufficient but not greater than necessary to reflect the seriousness of this offense since this is Defendant's third armed robbery.  Sentencing courts may take a degree of variance into account when sentencing outside the advisory guideline range and no extraordinary circumstances are needed to justify that variance.  Gall v. United States, 552 U.S. 38, 46-51 (2007).  "Because the Sentencing Guidelines are now advisory, a district court is permitted to vary from those guidelines in order to impose a sentence which fits the mandate of section 3553(a)."  United States v. Collington, 461 F.3d 805, 808 (6th Cir. 2006) (citation omitted).  See also, United States v. Lanning, 633 F.3d 469 (6th Cir.2011).  The government respectfully requests that the Court impose a sentence of 96 months imprisonment to be followed by 3 years of supervised release.

WHEREFORE, the United States respectfully submits the within Government's Sentencing Memorandum.

        Respectfully submitted,

        JUSTIN E. HERDMAN
        United States Attorney

By:   /s/ Henry F. DeBaggis
      Henry F. DeBaggis (OH: 0007561)
      Assistant United States Attorney
      801 West Superior Avenue, Suite 400
      Cleveland, OH  441134
      (216) 622-3749
      (216) 522-7499 (facsimile)
      Henry.DeBaggis@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on this 30th day of May, 2019, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

                                      /s/ Henry F. DeBaggis
                                      Henry F. DeBaggis
                                      Assistant U.S. Attorney